## 52478. VALENTINE v. ALLSTATE INSURANCE COMPANY et al.

QUILLIAN, Judge.

The appellant, Mrs. Valentine, was injured in an automobile collision and filed a complaint against the owner of the other vehicle and its driver. Allstate Insurance Company, the liability carrier for the defendant, tendered a policy limit of $10,300 in the court, which tender was not accepted. Allstate then filed an action for interpleader naming as defendant the appellant Valentine and the appellee Macon-Bibb County Hospital Authority, d/b/a Medical Center of Central Georgia ("Medical Center"). Mrs. Valentine had been hospitalized at the Medical Center as a result of injuries received in the automobile collision. In the interpleader action Allstate tendered the policy limit, alleging that Mrs. Valentine was contesting the validity of a hospital lien in the amount of $8,402.55 which the Medical Center had filed to secure the payment of its bill for services rendered to Mrs. Valentine with regard to treatment of injuries received in the collision.

By order, the trial court accepted Allstate's tender and discharged it from the case. Mrs. Valentine and the Medical Center were directed to establish their respective rights to the $10,300 on deposit in the court's registry.

The parties entered into a stipulation of fact as follows: The Medical Center bill of $8,402.55 was reasonable for the services rendered to Mrs. Valentine. The Medical Center had received a payment of $7,396.39 from the Medicaid Program. $315.00 represented room cost in excess of the amount allowed by Medicaid, and $48 represented costs for other items not covered by Medicaid, leaving a total of $363 remaining as an individual obligation of Mrs. Valentine. Medicaid did not reimburse the Medical Center for covered charges which total

$643.16. As a result of the Medicaid payment, $7,396.39 has been paid on Medical Center's bill of $8,402.55. Thus, there remains an unpaid portion of the total bill of $1,006.16. The Medical Center qualified for Medicaid under an application made by its predecessor and acted under policies and procedures pertaining to hospitals participating in Medicaid which were attached as an exhibit to the stipulation of fact.

The following pertinent provisions of the policies and procedures are set forth here: Section 3.3 (3) "The hospital agrees to accept reimbursement as full payment, subject to adjustment, for the period of hospitalization for which the State assumes responsibility and accept no payment in excess of the reimbursement from the patient or other person for said period and apply as a credit to the amount due under the program any insurance or other third party payments applicable to the period for which the state assumes responsibility." Section 3.4 (7) "It is the responsibility of the participating hospital to secure an assignment on any hospitalization insurance benefits applicable to admissions covered by this Program and submit claim to the insurance company for payment. In the rare instances when insurance or other third party funds applicable to the period authorized for payment exceeds the amount due under the Program, the hospital may elect not to complete and file a Statement of Inpatient Hospital Services, Form MA 1.1. In such instances, the hospital must agree to accept such funds as payment in full for services rendered during the period for which the Program assumes responsibility." Section 3.3 (8) "If the hospital receives unreported insurance or other third party funds for the period authorized for payment after the claim is paid, it shall be the responsibility of the hospital to refund such amount to the Georgia Department of Public Health."

Beside the provisions of the policies and procedures between the hospital (Medical Center) and the state which we have quoted above, we have been cited the federal regulations with regard to the duties between the state and the federal government. See 45 CFR § 250.31, which reads that: a state plan for medical assistance must provide:

"(a) (1) The State or local agency will take reasonable measures to ascertain any legal liability of third parties. . . (3) The State or local agency will not withhold payment in behalf of an eligible individual because of the liability of a third party when such liability or the amount thereof cannot be currently established or is not currently available to pay the individual's medical expense. (4) The State or local agency will seek reimbursement from a third party for assistance provided when the party's liability is established after assistance is granted and in any other case in which the liability of a third party existed, but was not treated as a current resource. (b) . . . Accordingly, since the liability of a third party is considered as a resource, the State may not include, in the amount claimed, payments made for medical care and services rendered recipients, arising out of injury, disease, or disability, to the extent that: (1) The third party liability constituted a current resource but was disregarded when such payments were made, (2) the agency failed to take reasonable steps to collect reimbursement from a third party whose liability was subsequently established."

The case was heard by the trial judge without a jury. Since Mrs. Valentine's attorney represented her on a contingent fee contract by which he was to receive one-third of any gross recovery, the judgment of the court provided that Mrs. Valentine's attorney be paid the sum of $3,433.33 (see Code Ann. § 67-2207; Ga. L. 1953, Nov. Sess., p. 105) and that the appellee, Medical Center, be paid the sum of $6,866.67, such amount merely reducing pro tanto the hospital lien of the Medical Center.

Mrs. Valentine appeals and assigns error on that part of the judgment paying the sum of $6,866.67 to the Medical Center. *Held:*

1. It should be observed this case is complicated by the fact that neither the state nor the federal government is a party to this proceeding. There is nothing in the record as to any agreement or action taken by either the state or the federal government. Thus, we can only consider what the regulations provide as between the state and the federal government and what the policies and procedures are regarding the state and Medical Center.

*Between the State and Federal Government* (45 CFR § 250.31.)

The state is not allowed to withhold payment although a third party's liability on the amount thereof is not currently established or available. However, the state will seek reimbursement when the liability is established. The failure to take reasonable steps to collect reimbursement will preclude the state's including such sum in the amount claimed from the federal government.

As can be seen this imposes obligations upon the state but does not provide how the state must pursue its duties or give to the state any legal right or provide a manner of enforcement.

*Between the State and the Hospital (Medical Center)* (§ 3.3 et seq.)

The hospital must accept reimbursement from the state as full payment and may not accept any payment in excess thereof. It is further obligated to credit insurance or third-party payments against the amount due. If the hospital receives insurance or third-party funds after receiving payment it must refund such amount to the state.

It is evident that the hospital must credit or refund sums which it *receives*. The policies and procedures are silent about its duty to collect or pursue funds from third parties. Hence, if the hospital does not receive any money, it is under no obligation to credit or make refund to the state.

In the context of the present record, the only means of enforcement of these multi-faceted policies lies in our state Hospital Lien Law. That law provides it "shall not be construed as giving any hospital or agency herein referred to an independent right of action to determine liability for injuries sustained by a person or firm." Code Ann. § 67-2213 (Ga. L. 1953, Nov. Sess., pp. 105, 108). The Medical Center only has a lien for the unpaid balance of the reasonable charges for hospital care and treatment. Payment of the amount due extinguishes the lien. 51 AmJur2d 185, Liens, § 49. As pointed out in *Cheek v. J. Allen Couch & Son,* 125 Ga. App. 438, 445 (187 SE2d 907), Code Ann. §§ 67-2207 through 67-2213 make "all persons who may be liable for the payment of damages liable to the

hospital to the *extent of its claim.*" (Emphasis supplied.) Hence, here the hospital's lien would only be valid insofar as there is an amount not paid.

2. In this case, the Medical Center has received a payment of $7,396.39. The total amount due was $8,402.55. Hence, subtracting the sum paid to the Medical Center, there remains unpaid a balance of $1,006.16 less $643.16 which it is forbidden to obtain by the above quoted policies and procedures directed to the Medical Center (Section 3.3 (3)), for a total of $363. This was the only sum positively established by the evidence. Since this is not sufficient to warrant recovery on the lien for $6,866.67, the crucial issue to determine is the status of the payment to the Medical Center in the amount of $7,396.39.

It was incumbent on the Medical Center, in order to sustain its position to show that the sum of $7,396.39 was not unconditionally paid to it. For, if the sum in question was an unfettered payment it served to discharge the lien up to that amount.

After careful consideration, we find a sufficient basis to sustain the trial judge's finding that the payment was contingent and the lien was not paid off in such amount. We reach this conclusion in part because of the prevailing theme of the regulations and policies that have been discussed. In order to expedite matters, payment is made from the state to the hospital regardless of outstanding third-party liability, but the sums received from such claims are to be refunded or credited against the payment. Furthermore, the hospital lien statute, Code Ann. § 67-2210 (Ga. L. 1953, Nov. Sess., pp. 105, 106), gives a right to recover on the lien to an assignee of the hospital. Thus, the payment was conditional and subject to reduction by sums received by the Medical Center and thence required to be refunded.

However, this determination does not result in a blanket affirmance of the trial judge's order, part of which recited: "The Medical Center has certain reimbursement obligations to the State of Georgia. The Court concludes that the Medicaid payment has not extinguished the Medical Center's hospital lien nor the Medical Center's rights in the sum on deposit. Since the State of Georgia is

not a party to this litigation, the extent of its rights to be reimbursed by the Medical Center is not to be determined in this litigation, this being a matter between the State and the Medical Center." Conclusion of law No. 3.

The last sentence was error. The Medical Center's lien was valid only insofar as it involved sums which it must return to the state. That portion of $7,396.39 which the Medical Center will be allowed to retain is a payment in the accepted sense and served to discharge the proportional part of the lien. For example, if the sum returned to the state was only $5,000, the lien would be valid only for that amount plus the $363 which is not covered by Medicaid for a total of $5,363. (In this example $2,396.39 of the bill was paid by the state and $643.16 was paid by operation of the pertinent policies and procedures. (Section 3.3)) The patient, Mrs. Valentine, would be entitled to the remainder of the $6,866 since the hospital is not allowed to profit by its lien or retain a sum above that paid by Medicaid. For this reason, it was essential for the trial judge to determine the amount of reimbursement and his failure to do so works a reversal of this case.

This ruling also reverses Conclusion of Law No. 4 of the trial judge's order which provided the order was operable only in this case and allowed the lien to remain as to the pending tort action. Depending on the amount here found as constituting a contingent payment, the entire lien may (or may not) be discharged.

*Judgment reversed. Webb, J., concurs. Deen, P. J., concurs in the judgment only.*

ARGUED JULY 15, 1976 — DECIDED OCTOBER 22, 1976 — REHEARING DENIED NOVEMBER 12, 1976.

*George N. Skene,* for appellant.
*Sell, Comer & Popper, John D. Comer, John A. Draughon,* for appellees.